IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

ROGER SIMS                                                      PLAINTIFF
ADC #121381

V.                          Case No. 4:24-CV-00901-JM-BBM

VARNER UNIT; ADC; BARDEN, Major;
WASHINGTON, Classification Officer;
GIBSON, Warden; SUBER, Lieutenant;
DOES, Unknown Staff; DAVID WHITE,
Disciplinary Hearing Administrator; and
GRIFFIN, Deputy Warden                                        DEFENDANTS

**RECOMMENDED DISPOSITION**

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge James M. Moody Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within 14 days of the date of this Recommendation. If you do not file objections, Judge Moody may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

**I.      INTRODUCTION**

On October 18, 2024, Plaintiff Roger Sims ("Sims"), an inmate then incarcerated in the Varner Unit of the Arkansas Division of Correction ("ADC"),[1] filed a *pro se* Complaint

---

[1] Sims has since been transferred to the ADC's Delta Regional Unit. (Doc. 10).

under 42 U.S.C. § 1983. (Doc. 2). After being allowed an opportunity to correct the deficiencies identified in his Complaint, (Doc. 11), Sims filed an Amended Complaint. (Doc. 12). Before Sims may proceed with this action, the Court must screen his Amended Complaint in accordance with the Prison Litigation Reform Act ("PLRA").[2] 28 U.S.C. § 1915A(a).

## II.    ALLEGATIONS

In the Amended Complaint, Sims asserts that, in February and March 2024 in the Varner Unit, he was threatened, attacked, and had his property stolen by other inmates. (Doc. 12 at 6). He briefly transferred to the ADC's Malvern Unit. *Id.* When he returned to the Varner Unit on October 3, 2024, he requested protective custody. *Id.* Lieutenant L. Suber ("Lieutenant Suber"), Major R. Barden ("Major Barden"), and Classification Officer F. Washington ("Officer Washington") each heard his plea for protective custody, and each denied his request. *Id.* at 6.

Lieutenant Suber wrote Sims a disciplinary for refusing to go to general population. (Doc. 12 at 6, 14). Major Barden just laughed at Sims. *Id.* at 6. And Officer Washington told Sims that the Varner Unit did not have protective custody, that Sims would receive many disciplinaries for refusing housing, and that Sims "was a sorry excuse of a[n] inmate, a scary white boy with a sex charge who isn[']t a man and wants P.C." *Id.* Sims claims that

---

[2] The PLRA requires federal courts to screen prisoner complaints seeking relief against a governmental entity, officer, or employee. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or a portion thereof if the prisoner has raised claims that: (a) are legally frivolous or malicious; (b) fail to state a claim upon which relief may be granted; or (c) seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b). When making this determination, the Court must accept the truth of the factual allegations contained in the complaint, and it may consider the documents attached to the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011).

he informed "the defendants" of the prior threats, attacks, and stolen property but "the[y] would hear none of it." *Id.* Sims says the "defendants" denied his request by saying, "you have no enemies on file." *Id.* at 8.

Based on the October 3 disciplinary written by Lieutenant Suber, Sims was "locked [] in restrictive housing with no mat, pillow or blanket, no personal property, and no access to the news." (Doc. 12 at 8). He was only allowed boxers, a t-shirt, and socks. *Id.* at 9. He also received a reduction in his classification and a 40-day restriction on his phone, visitation, and commissary privileges. *Id.* at 8, 24. On October 14, non-party Officer Taylor wrote Sims a second disciplinary for refusing to go to general population. *Id.* at 6, 19. As a result, Sims continued his placement in restrictive housing and received an additional 60-day restriction on his phone, visitation, and commissary privileges. *Id.* at 8, 22. Sims appealed his disciplinary sentences to the disciplinary hearing administrator, David White ("Administrator White"), but Sims continued to be denied protective custody. *Id.* at 5.

Sims wrote an Inmate Request Form to Warden James Gibson ("Warden Gibson"), reporting his safety concerns. (Doc. 12 at 5, 13). On November 7, Warden Gibson forwarded the request to Deputy Warden T. Griffin ("Deputy Warden Griffin"). *Id.* But Deputy Warden Griffin "took no action, other than harassing [Sims]" and allowing Officer Washington to threaten Sims "multiple times." *Id.* at 5. Warden Gibson also answered Sims's grievance appeal regarding the safety issues and denied Sims's disciplinary appeal. *Id.* at 10.

Sims alleges that the "Varner Unit won[']t let inmates view the []Administrative Directive for Protective Custody, [be]cause they claim not to have P/C!" (Doc. 12 at 6).

Nevertheless, Sims claims that, in addition to violating his due process rights, the Varner Unit has violated the ADC's Protective Custody Policy. *Id.* at 7. Citing Arkansas Administrative Code 004-03.1-837, Sims notes that inmates who believe they are in danger may be placed in protective custody if the Classification Committee deems the placement to be justified or recommended. *Id.* at 7, 15–16. Until the claims are investigated and reviewed by the Classification Committee, the "Warden/Assistant Warden/Chief of Security or designee" may place an inmate in temporary protective custody. *Id.* at 7, 15. Sims states that he was never seen by the Classification Committee and that Warden Gibson, Major Barden, Officer Washington, and Lieutenant Suber violated his due process rights by refusing him temporary protective custody in violation of ADC policy. *Id.*

In addition to the prior inmate attacks, Sims alleges that the Varner Unit is particularly dangerous for him as a "sex offender and a[n] accused snitch!" (Doc. 12 at 8). He also claims that the Varner Unit is "so under staffed that abuse of all kinds happen daily" and, "on any given day[,] Varner Unit leaves posts uncovered." *Id.* at 9. He points to four occasions where his "lockdown" isolation cellblock had no officers on post; instead, one officer was covering three barracks and would "walk thru a couple times." *Id.* Sims claims this "makes attacking sex offenders, etc. a very easy job!" *Id.*

Sims sues Major Barden, Officer Washington, Lieutenant Suber, Warden Gibson, Administrator White, and Deputy Warden Griffen in their individual and official capacities.[3] (Doc. 12 at 1–2, 5). For relief, Sims seeks to have his "disciplinaries reversed

---

[3] Although Sims's original Complaint, (Doc. 2), was construed to raise a claim against the Varner Unit, ADC, and Doe defendants, no such defendants are named in the operative complaint, (Doc. 12). Sims

and removed from [his] record." *Id.* at 11. Despite having been transferred to another ADC unit before filing his Amended Complaint, *see id.* at 1, Sims also seeks injunctive relief in the form of having "all restrictions removed" and an order directing Varner Unit staff to assign him to protective custody or, alternatively, to transfer him to another unit. *Id.* at 11–12. He also seeks monetary damages. *Id.*

## III.   SCREENING

To survive pre-service screening under the PLRA, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[L]abels and conclusions," a "formulaic recitation of the elements of a cause of action," and "naked assertions devoid of further factual enhancement" are insufficient to plead a plausible claim. *Id.* Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). However, "[a] pro se complaint must be liberally construed," and courts "should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014) (cleaned up; citations omitted); *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (citation omitted).

---

also explicitly states his desire to "remove all 'Does and Unknown Staff' from this action since he is unable to identify them." *Id.* at 5.

Liberally construing the Amended Complaint, Sims raises failure-to-protect, due-process, and official-capacity claims. However, despite the opportunity to amend, Sims's allegations still fail to state a claim for relief.

## A.    Failure to Protect

To plead a viable failure-to-protect claim under the Eighth Amendment, an inmate must allege facts suggesting that: (1) objectively, there was a substantial risk of serious harm; and (2) subjectively, the defendants knew of and disregarded that substantial risk of serious harm. *Vandevender v. Sass*, 970 F.3d 972, 975 (8th Cir. 2020); *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000). As to the second element, the Eighth Circuit has emphasized that a prison official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Vandevender*, 970 F.3d at 975–76 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Despite Sims's prior troubles in the Varner Unit, the allegations fall short of showing that Varner general population, in fact, constituted a substantial risk of serious harm to him. Sims alleges generally that he is a "sex offender and a[n] accused snitch," (Doc. 12 at 8), and that, accordingly, the conditions in Varner general population pose a risk of harm to him. *Id.* But Sims does not allege that he received any specific threat from any Varner inmate or even that any Varner inmate was aware of his status as a sex offender and purported snitch. There is also no allegation that any of the prior inmates that caused Sims trouble were still in general population at the Varner Unit. Thus, short of speculation,

6

there is nothing to suggest that releasing Sims into Varner general population would subject him to a risk of harm.

Even if the Court assumes there was a subjective, substantial risk of harm, Sims's failure-to-protect claim fails because there is no allegation that any Defendant was aware of a "*specific* threat or danger" to Sims. *Jones v. Wallace*, 641 F. App'x 665, 666 (8th Cir. 2016) (emphasis added). Sims apparently concedes that there was no individual inmate on his enemy-alert list, which the Defendants relied on in denying his request for protective custody. *See* (Doc. 12 at 8). And Sims does not allege that he communicated any specific threat to Defendants. Sims's "general fear for his safety" during his second stay at Varner does not establish that any Defendant "acted with deliberate indifference by not placing him in protective custody." *Id.* (quoting *Robinson v. Cavanaugh*, 20 F.3d 892, 895 (8th Cir. 1994)).

Finally, Sims did *not* go to general population, and he was not attacked during his brief stay at the Varner Unit, despite an alleged lack of staffing. In other words, Sims did not suffer any injury from Defendants' actions. *See Schoelch v. Mitchell*, 625 F.3d 1041, 1047 (8th Cir. 2010) (affirming judgment in favor of defendant where plaintiff failed to show "an objectively serious mental or physical injury" based on defendant's alleged failure to protect or that defendant's actions were "likely to cause serious injury in the future"); *see also Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008) ("Because a § 1983 action is a type of tort claim, general principles of tort law require that a plaintiff suffer some actual injury before he can receive compensation."). Resultantly, Sims fails to state

a claim for relief based on Defendants' alleged failure to protect, and it is recommended that the claims be dismissed.

### B. Procedural Due Process

Sims alleges that Warden Gibson, Major Barden, Officer Washington, and Lieutenant Suber violated his due process rights by refusing him temporary protective custody in violation of ADC policy. (Doc. 12 at 7). But a violation of ADC regulations, standing alone, does not establish a constitutional violation. *Moore v. Rowley*, 126 F. App'x 759, 760 (8th Cir. 2005) (citing *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997)).

Sims also complains that Lieutenant Suber and non-party Officer Taylor wrote him disciplinaries for refusing to go to general population. (Doc. 12 at 6). And Administrator White received (and apparently denied) Sims's disciplinary appeals, as did Warden Gibson. *Id.* at 5. Sims also implies that Warden Gibson, Major Barden, Officer Washington, and Lieutenant Suber caused the "refusing housing" disciplinaries by denying him protective custody. *Id.* at 7. Even if the Court liberally construes Sims's disciplinary allegations as raising procedural due process claims, the claims fail.

An inmate may maintain a due process challenge to a prison-disciplinary proceeding only if he has a liberty interest at stake. *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003). An inmate is deemed to have a liberty interest at stake when the resulting discipline "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or "inevitably affect[s] the duration of his sentence." *Sandin*, 515 U.S. at 484, 487.

8

Even if the Court assumes that Sims had a liberty interest at stake,[4] Sims's allegations fall woefully short of demonstrating he was denied due process. *If* a prisoner has a liberty interest at stake, he is entitled to some form of due process procedures. *See Spann v. Lombardi*, 65 F.4th 987, 992 (8th Cir. 2023) (noting that transfers to administrative segregation only require "informal, nonadversary due process procedures," whereas more robust procedures are required for disciplinaries resulting in a longer term of imprisonment). But Sims only complains that the Defendants "made" him refuse housing by denying protective custody, which resulted in disciplinaries. (Doc. 12 at 8). These allegations do not demonstrate that Sims was denied due process procedures before ultimately being found guilty of the disciplinary charges. Accordingly, with no alleged lack of procedure, it is recommended that Sims's due process claims be dismissed without prejudice for failure to state a claim for relief.

## C.    Official-Capacity Claims

Having discussed the individual-capacity claims against the Defendants, the Court turns to Sims's official-capacity claims. "A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). Sims's official-

---

[4] The Court is doubtful Sims's allegations sufficiently state a liberty interest. *See Rhaman X v. Morgan*, 300 F.3d 970, 974 (8th Cir. 2002) (holding that inmate's placement in administrative segregation for 26 months under relatively normal conditions did not constitute an atypical and significant hardship under *Sandin*); *see also Orr v. Larkins*, 610 F.3d 1032, 1034 (8th Cir. 2010) (inmate was not deprived of liberty interest during nine months in administrative segregation); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (no liberty interest in prison classification); *Blair-Bey v. Iowa*, 732 F. App'x 488 (8th Cir. 2018) (same); *Jackson v. Lay*, No. 2:21-CV-00129-KGB-JTK, 2023 WL 3340113, at *6 (E.D. Ark. May 10, 2023), *report and recommendation adopted*, 2024 WL 4347890 (E.D. Ark. Sept. 30, 2024), *aff'd*, No. 24-3470, 2025 WL 1591355 (8th Cir. May 1, 2025) (no liberty interest in 90-day restrictions on telephone, visitation, and commissary privileges).

capacity claims against the Defendants, then, are the equivalent of claims against the State of Arkansas. As an initial matter, the State is entitled to Eleventh Amendment immunity on Sims's claims for monetary damages. *Nix v. Norman*, 879 F.2d 429, 432 (8th Cir. 1989).

To the extent Sims seeks injunctive or prospective relief from the ADC Defendants, Sims must allege facts showing that the purported constitutional violations were the result of an official ADC policy, an unofficial custom, or a failure to train. *Nix*, 879 F.2d at 433; *Hood v. Norris*, 189 F. App'x 580 (8th Cir. 2006). Because Sims has not made any such allegations, he has also failed to plead any plausible official-capacity claims. Finally, Sims's claims for injunctive relief are moot because he is no longer incarcerated in the Varner Unit. *Martin v. Sargent,* 780 F.2d 1334, 1337 (8th Cir. 1985). ("[A] prisoner's claim for injunctive relief to improve prison conditions is moot if he or she is no longer subject to those conditions.").

## IV.   CONCLUSION

After being provided leave to cure the deficiencies in his original complaint, Sims still fails to allege a plausible constitutional violation.

IT IS THEREFORE RECOMMENDED THAT:

1.     The Varner Unit, ADC, and Doe Defendants—who were not named in operative complaint—be TERMINATED as parties to this action.

2.     Sims's Amended Complaint, (Doc. 12), be DISMISSED without prejudice for failure to state a claim upon which relief may be granted.

3.     The Court RECOMMEND that the dismissal count as a "strike" for the purposes of the Prison Litigation Reform Act. 28 U.S.C. § 1915(g).

4.    The Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting this Recommendation would not be taken in good faith.

DATED this 3rd day of June, 2026.

Benicia Moore

UNITED STATES MAGISTRATE JUDGE